## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.:

MATTHEW EZOLD, individually and on
behalf of all others similarly situated,

>      *Plaintiff*,

> *v.*

TRACFONE WIRELESS, INC. d/b/a
SAFELINK WIRELESS, a Delaware
corporation,

>      *Defendant.*

### CLASS ACTION COMPLAINT
### AND DEMAND FOR JURY TRIAL

Plaintiff Matthew Ezold ("Ezold" or "Plaintiff") brings this Class Action Complaint and

Demand for Jury Trial ("Complaint") against Defendant TracFone Wireless, Inc. d/b/a SafeLink

Wireless ("SafeLink" or "Defendant") to: (1) stop SafeLink's practice of placing calls using "an

artificial or prerecorded voice" to the residential landline telephones of consumers nationwide

without their prior express written consent; (2) stop SafeLink from calling consumers who are

registered on the National Do Not Call Registry; (3) stop SafeLink's practice of calling

consumers who have expressly requested that they not be called; and (4) obtain redress for all

persons injured by SafeLink's conduct. Plaintiff Ezold, for his Complaint, alleges as follows

upon personal knowledge as to himself and his own acts and experiences, and, as to all other

matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff Matthew Ezold is a natural person and resident of Montgomery County, Pennsylvania.

2.      Defendant SafeLink is a corporation organized and existing under the laws of the State of Delaware. SafeLink systemically and continuously conducts business throughout this District, the State of Florida, and the United States. SafeLink is registered to do business in Florida with the Secretary of State and the Public Service Commission. SafeLink maintains its corporate headquarters within this District, at 9700 NW 112th Avenue, Miami, Florida 33178. SafeLink can be served through its registered agent, Corporate Creations Network, Inc., located at 801 S Highway 1, North Palm Beach, Florida 33408.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Plaintiff's TCPA claims, for which this Court has original jurisdiction, that they form part of the same case or controversy.

4.      This Court has personal jurisdiction over SafeLink because SafeLink solicits significant consumer business in this District, SafeLink has entered into contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, and/or was directed, from this District.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because SafeLink conducts a significant amount of business within this District and because the wrongful conduct

giving rise to this case occurred in, and/or was directed from, this District. Venue is additionally

proper because Defendant resides in this District.

## COMMON ALLEGATIONS OF FACT

6.      Since 1985, the Federal Communications Commission ("FCC") has operated the

"Lifeline" program to help make communications services more affordable for low-income

consumers. Lifeline provides subscribers a discount on monthly telephone service, broadband

Internet access service, or voice-broadband bundled service purchased from participating

providers

7.      SafeLink is an Eligible Telecommunications Carrier ("ETC") in the FCC's

Lifeline program, offering discounted or free telecommunication services to consumers

throughout the United States.

8.      The TCPA prohibits companies, such as SafeLink, from placing calls using an

artificial or prerecorded voice ("prerecorded calls") when making calls to residential landline

telephones without first obtaining consent.

9.      SafeLink has violated, and continues to violate, the TCPA and its implementing

regulations by placing, or having placed on its behalf, prerecorded calls to both cellular

telephone subscribers and residential landline telephone subscribers (a) who have not expressly

consented to receiving such calls and/or (b) who have expressly requested ***not*** to receive such

calls.

10.     As Congress recognized:

Many customers are outraged over the proliferation of intrusive, nuisance calls to
their homes from telemarketers…. Banning such automated or prerecorded
telephone calls to the home, except when the receiving party consents to receiving
the call or when such calls are necessary in an emergency situation affecting the

health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.[1]

11.    Senator Larry Pressler, one of the original drafters of the TCPA, explained the need for the TCPA by observing that "[u]nlike other communications media, the telephone commands our instan[t] attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered." 137 Cong. Rec. S18785 (daily ed. Nov. 27, 1991) (statement of Sen. Pressler).

12.    As explained by the FCC[2], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

13.    Yet, in violation of this rule, SafeLink fail to obtain any prior express written consent to place prerecorded calls to consumers' cellular and residential landline telephone numbers.

14.    Consumer complaints about SafeLink's invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- got a call from this number again today. recorded message trying to get me to add minutes to my tracphone. Don't have one, never have had one. Used to just be recorded message from Safelink, same voice and speech.[3]
- PLEASE_ STOP ROBO-CALLING MY HOME!!! I AM _NOT_ INTERESTED IN YOUR PRODUCT - SAFELINK.[4]
- This is some kind of scam. A recorded message to my phone which is on the National Do-Not-Call list...I've tried to get this company to stop the calls which

---

[1] Pub. L. No. 102-243 § 2(6, 12) (1991), codified at 47 U.S.C. § 227.
[2] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).
[3] https://800notes.com/Phone.aspx/1-888-636-7596
[4] *Id.*

have hit 3-6 times a day now from 3 different numbers, all with the same
recording.[5]

- Just got a automated call now from something called 'Safelink' stating my trac
phone service was going to be discontinued. Interesting since the phone call went
thru my land line and I do not have a cell phone at all!!![6]

- Want them to stop calling me. Have never had safelink.[7]

- This number continues to call me, even though I have told them repeatedly to
stop. I do not subscribe to their service and I do not know anyone who subscribes
to their service. I do not know why they continue to call me.[8]

- I do not have Tracfone. So why would they call me?[9]

15.     In response to the liability risk associated with the TCPA, numerous
commercially available services exist to help companies that call others using prerecorded
voices, such as SafeLink, to identify telephone numbers that are on the Nation Do Not Call
Registry or are cellular subscribers and otherwise ensure that calls are only made to consenting
consumers. For instance, companies such as Infutor, Nextmark List, and Contact Center
Compliance advertise their ability to instantly identify and flag disconnected telephone numbers
from cellular telephone number data lists on a recurring basis (such as weekly or monthly). This
type of service can identify disconnected numbers before they are recycled, thereby alerting
mobile marketers that any consent associated with those telephone numbers has been terminated.

16.     Despite the FCC's ruling, the industry guidelines, and the commercial availability
of programs that help callers filter out non-consenting numbers, SafeLink fails to take the
necessary steps to ensure that their prerecorded calls are placed only to consenting recipients.

---

[5] https://800notes.com/Phone.aspx/1-888-470-6777
[6] *Id.*
[7] https://800notes.com/Phone.aspx/1-800-378-1684/2
[8] *Id.*
[9] https://800notes.com/Phone.aspx/1-888-449-3610

17.     Rather, in an effort to increase revenue and skirt additional costs, SafeLink simply ignores the law when contacting individuals via prerecorded calls to their cellular and residential landline telephones.

18.     Indeed, SafeLink has been sued at least twice before for alleged TCPA violations.[10]

19.     SafeLink knows or should know that its prerecorded calls are placed to non-consenting cellular and residential landline telephone subscribers. Ultimately, SafeLink is responsible for verifying telephone number ownership and obtaining consent before placing prerecorded calls to cellular and residential landline telephone subscribers.

20.     SafeLink was, and is, aware that its unsolicited prerecorded calls were, and are, unauthorized as they fail to obtain prior express written consent before placing those calls to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited prerecorded calls.

21.     Telemarketers can easily and inexpensively avoid calling consumers who are registered on the National Do Not Call Registry by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers whom opt-out of telemarketing calls.

22.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

---

[10] *See Bloch v. Tracfone Wireless Inc. d/b/a SafeLink*, Case No. 1:16-cv-01372 (E.D.N.Y. filed 3/22/16); *Gallant v. Tracfone Wireless, Inc. d/b/a SafeLink Wireless*, Case No. 1:19-cv-20580 (S.D. Fla. filed 2/13/19).

23. By placing the unsolicited prerecorded calls at issue in this Complaint, SafeLink caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasions of privacy that result from the sending and receipt of such prerecorded calls, a loss of value realized for the monies consumers paid to their carriers for the receipt of such prerecorded calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

24. In response to SafeLink's unlawful conduct, Plaintiff filed this action seeking (a) an injunction requiring SafeLink to cease all unsolicited prerecorded calling activities and, (b) an award of actual or statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF MATTHEW EZOLD

25. Plaintiff Ezold is the registered account owner and regular user of a residential telephone number 610-xxx-0582. Plaintiff's residential telephone uses a Voice over Internet Protocol ("VoIP"), a service for which he is charged for the ability to receive and send calls. The VoIP is connected to Plaintiff's home and primary residence.

26. In addition to being charged for the internet connection itself, Plaintiff separately pays for calls made to and from his residential VoIP line.

27. The 0582 telephone number has been registered on the National Do Not Call Registry since February 23, 2014.

28. Beginning at least as early as April 5, 2016, Plaintiff received ***more than one hundred*** unsolicited, prerecorded phone calls on his residential telephone number from, or on behalf, of SafeLink.

7

29.     The April 5, 2016 call used a prerecorded voice and stated:

Hi, this is Stacy from SafeLink, a service of TracFone calling with a special message for SafeLink customers. If you no longer wish to receive these messages please call 1-888-449-3610. If you have extra change in your pocket from taxes, then take advantage of this great offer for our SafeLink customers. Now you can get 350 minutes for only $10. Just go to your nearest Dollar General Store or call 1-888-449-3610 to have the airtime added to your phone. Again, get 350 minutes for only $10 by going to Dollar General or calling 1-888-449-3610. Thanks for being a SafeLink customer and have a great day.

30.     Plaintiff is not now, and has never been a SafeLink customer.

31.     Plaintiff received ***more than one hundred*** additional, unsolicited prerecorded phone calls from SafeLink. The prerecorded calls all identified SafeLink by name.

32.     Plaintiff was annoyed and inconvenienced by these *incessant*, unwanted invasions of his privacy on his residential telephone, forcing him to spend time and effort to determine exactly who was attempting to solicit him and for what, and to attempt in vain to get them to stop.

33.     Plaintiff tried, repeatedly, to get SafeLink to stop calling him on the 0582 telephone number, to no avail.

34.     Plaintiff has never provided prior express written consent to SafeLink to receive prerecorded calls to him on the 0582 telephone number.

35.     SafeLink failed to obtain prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

8

36.     By placing the prerecorded calls as alleged herein, SafeLink has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the prerecorded call disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

37.     SafeLink's violations are willful and egregious given they continued to place unwanted calls to Plaintiff despite multiple requests by Plaintiff to get the unwanted prerecorded calls to cease.

38.     In order to redress these injuries, Plaintiff, on behalf of himself and the other members of the Classes, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded calls to cellular and residential telephones.

39.     On behalf of the Classes, Plaintiff seeks an injunction requiring SafeLink to cease all unsolicited prerecorded calling activities, and to further cease placing calls to phone numbers listed on the National Do Not Call Registry, and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

40.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Robocall Residential Landline Telephone No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial Complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's residential landline telephone number using an artificial or prerecorded voice; and (3) for whom Defendant lacked prior express consent to call that residential landline telephone number at the time the call was made.

**Do Not Call Registry Class:** All persons in the United States who from a date four years prior to the filing of the initial Complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her residential or cellular telephone number; (2) within any 12-month period (3) where the residential or cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant lacked prior express consent to call that residential telephone number at the time the call was made.

**Stop Call Class:** All persons in the United States who from a date four years prior to the filing of the initial Complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's residential telephone number; (3) for the purpose of promoting a business or service; and (4) after the person informed Defendant to stop calling them.

**Pennsylvania Telemarketer Registration Act Class**: All Pennsylvania citizens who from a date four years prior to the filing of the initial Complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) called more than one time; (2) on the person's residential telephone number; (3) for the purpose of promoting a business or service; and (4) for whom Defendant lacked prior express consent to call that residential telephone number at the time the call was made

41.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest, and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

42.     Plaintiff anticipates the need to amend the definition of the Classes following class discovery, including discovery revealing the manner by which Defendant claims it obtained prior express consent to place autodialed and/or prerecorded calls to the Plaintiff.

10

43.     **Numerosity**: The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed unsolicited calls to hundreds or thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through Defendant's records.

44.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct, namely their unauthorized telemarketing calls. Plaintiff is a member of the Classes defined herein, and if Plaintiff is able to recover for the claims set forth in this Complaint, then the other members of the Classes will have a right to recover as well.

45.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes. Plaintiff has no conflicts with, or interests antagonistic to, those of the Classes, and Defendant has no defenses unique to Plaintiff.

46.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

a)  Whether SafeLink's conduct constitutes a violation of the TCPA;

b)  Whether SafeLink utilized an artificial or prerecorded voice to place calls to members of the Robocall Residential Number No Consent Class;

   c)  Whether members of the Robocall Residential Number No Consent Class are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

   d)  Whether SafeLink obtained prior express consent to contact any Class members;

   e)  Whether SafeLink's calls constitute telemarketing or were dual purpose messages;

   f)  whether members of the Stop Call Class revoked their consent; and

   g)  To the extent SafeLink's conduct does not constitute telemarketing, whether SafeLink obtained prior express oral consent to contact any Class members.

47.    **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action. Individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

48.    Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Robocall Residential Number No Consent Class)**

49.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50.     Defendant and/or its agents placed unsolicited calls to residential telephone numbers belonging to Plaintiff and the other members of the Robocall Residential Number No Consent Class.

51.     These calls were made without the prior express written consent of the Plaintiff and the other members of the Robocall Residential Number No Consent Class to receive such calls.

52.     These calls, including those to Plaintiff, utilized an artificial or prerecorded voice.

53.     To the extent prior written express consent was required, Defendant failed to obtain prior written express consent that disclosed to the consumer that agreeing to receive prerecorded calls was not a condition of purchase or use of any goods or service. Neither was oral consent provided.

54.     Defendant have, therefore, violated 47 U.S.C. § 227(b)(1)(B). As a result of Defendant's conduct, Plaintiff and the other members of the Robocall Residential Number No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

55.     In the event that the Court determines that Defendant's conduct was willfull and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall Residential Number No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

56.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

57.     47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations. Those regulations were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

58.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

59.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

60.     47 C.F.R. § 64.1200(d) further provides that:

[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

61.     SafeLink violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated,

telephone solicitations to residential telephone subscribers such as Plaintiff and the Do Not Call

Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

62.     SafeLink also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel involved in any aspect of telemarketing regarding any do not call list, and by failing to record and honor do not call requests.

63.     SafeLink placed more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such prerecorded calls. Plaintiff and members of the Do Not Call Registry Class never provided any form of consent to receive prerecorded calls from SafeLink, and/or SafeLink does not have a current record of consent to place prerecorded calls to them.

64.     SafeLink violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

65.     SafeLink has, therefore, violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one prerecorded call in a 12-month period made by, or on behalf of, SafeLink in violation of 47 C.F.R. § 64.1200, as described above. As a result of SafeLink's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered

actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

66.     In the event that the Court determines that SafeLink's conduct was willfull and knowing, it may, under 47 U.S.C. § 227(c)(5)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Do Not Call Registry Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Stop Call Class)**

67.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

68.     SafeLink and/or its agent placed unsolicited telemarketing calls to residential telephone numbers belonging to Plaintiff and the other members of the Stop Call Class.

69.     Plaintiff and other members of the Stop Call Class expressly requested that SafeLink no longer place calls to them, after which Defendant failed to place Plaintiff and other members of the Stop Call Class on Defendant's internal do-not-call list (or failed to do so within a reasonable time period).

70.     More than thirty days following Plaintiff Ezold's and the other members of the Stop Call Class' express requests to not receive calls from SafeLink, Defendant placed additional calls to them without their consent and in contradiction of their requests not to be called.

71.     SafeLink violated 47 C.F.R. § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Stop Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

72.     SafeLink violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Stop Call Class received more than one telephone call within a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Stop Call Class suffered actual damages, an invasion of their privacy, and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

73.     In the event that the Court determines that Defendant's conduct was willfull and knowing, it may, under 47 U.S.C. § 227(b)(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Call Class.

**FOURTH CAUSE OF ACTION**
**Pennsylvania Telemarketer Registration Act**
**(Violation of 73 P.S. § 2241 *et seq.*)**
**(On Behalf of Plaintiff and the Pennsylvania Telemarketer Act Class)**

74.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

75.     As alleged with specificity herein, SafeLink initiated outbound telephone calls to Plaintiff and the Pennsylvania Telemarketer Act Class despite the fact that the called numbers were registered on the Pennsylvania and/or National Do Not Call Registries.

76.     As such, SafeLink violated the Pennsylvania Telemarketer Registration Act, 73 P.S. §§2241-2249 ("PTRA").

77.     Specifically, SafeLink violated 73 P.S. §2245.2(a), which forbids telemarketers from initiating or causing to be initiated telephone solicitations to any telephone number of a subscriber who has registered their number on a do not call registry.

78.     As alleged with specificity herein, SafeLink further violated the PTRA by failing to immediately take Plaintiff and the Stop Call Class members off of SafeLink's call list.

79.     SafeLink's failure to do so is a violation of 73 P.S. §2245.2(I)(1)(i), which requires telemarketers to establish a procedure for consumers to immediately be taken off the telemarketer's call list.

80.     Under 73 P.S. §2246, a violation of the PTRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P. S. §201-1 *et seq.*

81.     SafeLink may have further violated the PTRA, which can be identified through discovery. For example, the PTRA provides, "it shall be unlawful for any telemarketer to initiate a telephone call to or receive a telephone call from a consumer in connection with the purchase of consumer goods or services, unless the telemarketer or the telemarketing business which employs the telemarketer is registered with the Office of Attorney General… at least 30 days prior to offering for sale consumer goods or services through any medium." 73 P.S. § 2241 § 3(a)-(b).

82.     As a result of SafeLink's violations of the PTRA, Plaintiff and the Pennsylvania Telemarketer Act Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P. S. §201-9.2(a).

83.     In the event that the Court determines that Defendant's conduct was willfull and knowing, it may, under 73 P.S. §201-9.2(a), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Pennsylvania Telemarketer Act Class.

84.     As a result of Defendant's violations of the PTRA, Plaintiff and the Pennsylvania Telemarketer Act Class members are also entitled to reasonable attorneys' fees and costs under 73 P.S. §201-9.2(a).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Matthew Ezold, individually and on behalf of the Classes,

prays for the following relief:

        A.      An order certifying this case as a class action on behalf of the Classes as defined

              above; appointing Ezold as the representative of the Classes and appointing his

              attorneys as Class Counsel;

        B.      An award of actual and statutory damages to be paid into a common fund for the

benefit of Plaintiff and the Classes;

        C.      An order declaring that Defendant's actions, as set out above, violate the TCPA;

        D.      An order declaring that Defendant's actions, as set out above, violate the PTRA;

        E.      An order requiring Defendant to disgorge any ill-gotten funds acquired as a result

of its unlawful telephone calling practices;

        F.      An order requiring Defendant to identify any third-party involved in the

prerecorded calling as set out above, as well as the terms of any contract or compensation

arrangement it has with such third parties;

        G.      An injunction requiring Defendant to cease all unsolicited prerecorded calling

activities, and otherwise protecting the interests of the Classes;

        H.      An injunction prohibiting Defendant from contracting with any third-party for

marketing purposes until it establishes and implements policies and procedures for ensuring the

third-party's compliance with the TCPA;

        I.      An award of reasonable attorneys' fees and costs to be paid out of the common

fund prayed for above; and

        J.      Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**MATTHEW EZOLD**, individually and on behalf of Classes of similarly situated individuals,

Dated: March 27th,  2020

By:   /s/   Andrew Shamis
     One of Plaintiff's Attorneys

Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Shamis & Gentile, P.A.
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: (305) 479-2299

Katrina Carroll*
kcarroll@carlsonlynch.com
Carlson Lynch LLP
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
Facsimile: (312) 483-1032

Daniel R. Karon*
dkaron@karonllc.com
Karon LLC
700 W. St. Clair Ave., Ste. 200
Cleveland, OH 44113
Telephone: (216) 622-1851
Facsimile: (216) 241-8175

Adam T. Savett*
adam@savettlaw.com
Savett Law Offices LLC
2764 Carole Lane
Allentown PA 18104
Telephone: (610) 621-4550
Facsimile: (610) 978-2970

*Attorneys for Plaintiff and the Putative Classes*

*\*Pro Hac Vice applications to be filed*